# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

```
------------------------------------------------------------x
                                          :
In re                                     :  Chapter 11
                                          :
GPS INDUSTRIES, INC.,                     :  Case No. 8:09-bk-16766-CPM
                                          :
                                          :
            Debtor.                       :
                                          :
------------------------------------------------------------x
```

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DEBTOR'S (A) DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(b) OF THE BANKRUPTCY CODE, AND (B) SOLICITATION OF VOTES AND VOTING PROCEDURES AND (II) CONFIRMING THE DEBTOR'S AMENDED PLAN OF REORGANIZATION

This cause came on for hearing on September 25, 2009 (the "Confirmation Hearing") to consider the approval of the Debtor's Disclosure Statement (Docket # 19), the confirmation of the Joint Plan of Reorganization ("Joint Plan") filed by the Debtor and the Unsecured Creditors Committee (Docket #98), and the Objections thereto (Docket #s 112, 119, and 122).

WHEREAS, GPS Industries, Inc., as debtor and debtor in possession ("GPSI" or the "Debtor"), has proposed and filed with the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "Court") (**A**) the Plan of Reorganization for GPS Industries, Inc., dated August 5, 2009 (the "Original Plan") (Docket #18), as amended on September 10, 2009 (the "Plan Amendment") (Docket #83), all as supplanted and superseded by the Joint Plan proposed by the Debtor and the Unsecured

Creditors Committee (the "Committee") on September 19, 2009[1] (Docket #98) and as subsequently amended or clarified by *ore tenus* representations at the Confirmation Hearing, collectively the "Plan" and (**B**) (i) the Disclosure Statement for Plan of Reorganization for GPS Industries, Inc., dated and filed with the Court on August 5, 2009 (the "Disclosure Statement") (Docket #19), and (ii) appropriate ballots for voting on the Plan (the "Ballots") having been duly transmitted to holders of claims in compliance with applicable law; and

WHEREAS on September 10, 2009, the Court entered that certain Order Granting *Ore Tenus* Motion to File an Amendment to the Plan and Continue Confirmation Hearing (the "Scheduling Order") (Docket #82), which, among other things, scheduled a hearing on confirmation of the Original Plan and Plan Amendment, including timely filed objections to confirmation, objections to the Disclosure Statement, and motions for cram down, (together, the "Confirmation Hearing"); and

WHEREAS due notice of the Confirmation Hearing has been given to holders of claims against the Debtor and other parties in interest in compliance with title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Scheduling Order, as established by the certificates of service, mailing, and/or publication filed with the Court; and

---

[1] On September 19, 2009, the Debtor and the Official Committee of Unsecured Creditors served their Joint Chapter 11 Plan of Reorganization, which essentially synthesized and supplanted the Original Plan and the Plan Amendment and provided for additional bidding procedures and information as a result of the Court's ruling on certain motions to establish credit bidding rights by two secured creditors.

WHEREAS such notice is sufficient under the circumstances[2] and no further notice is required; and

WHEREAS pursuant to the Plan and the bid procedures for the sale of the Debtor's assets set forth therein, a Qualifying Bid[3] was received from Falconhead Capital, LLC on behalf of GPS Industries, LLC, and non-Conforming Bids were received from Tulip Group Investments, LTD, and credit bids were received from Darryl Cornish and Charles Huston; and the Debtor accepted the non-conforming Bids of Huston and Cornish in the auction of the Huston and Cornish Collateral and in the APA auction as Qualifying Bids pursuant to Article VII, Auction Bid Procedures, Section (b)(xv); and

WHEREAS Objections to Confirmation of the Plan were filed by Austin Manufacturing Services, Inc. (Docket # 112), ProLink Systems, Inc. (Docket #119), and Darryl Cornish, Charles Huston and Optimal I.P. Holdings, L.P. (Docket #122); and

WHEREAS at the Auction (defined in paragraph J. below) of the Debtor's assets conducted prior to the Confirmation Hearing, it was determined that the highest and best offer to the Debtor's estate is the $5,000,000.00 offer made by Falconhead Capital, LLC on behalf of GPS Industries, LLC[4] (the "Falconhead Offer"); and

---

[2] The applicable notice periods with regard to the transmission of the Plan and the opportunity to object thereto under F.R.B.P 2002 and other applicable law were modified by the court for cause to the dates set forth herein.

[3] Any capitalized terms not defined in this Confirmation Order shall have the meaning ascribed to them in other orders or papers filed in the record of this case.

[4] Pursuant to and as part of the Falconhead Offer the Purchaser is required to also deposit an additional 49% of $1,584,945.00 for distribution in accordance with the terms of the Plan. These monies shall be deposited in the Debtors' counsels trust account and shall be treated in accordance with section (xix of article 7 of the Plan.)

WHEREAS the Falconhead Offer is contingent upon the confirmation of the Plan; and

WHEREAS the Plan was amended in open Court at the Confirmation Hearing to (i) provide that $2,084,945.15 of the sale proceeds shall be placed in an interest bearing, Non IOTA, trust account (the "Escrowed Funds") with the secured claim of Huston and Cornish attaching to the Escrowed Funds, pending determination by the Court as to the treatment of Huston and Cornish's secured claim and (ii) the remainder of the sale proceeds shall be placed in the Trust Account of McIntyre, Panzarella, Thanasides, Eleff & Hoffman, P.L., and administered therefrom; and

WHEREAS the Proof of Claims filed by David Chessler (Claim #43), Ben Porter (Claim #44), and Russell Lee (Claim #47) were orally amended in open court by the respective claimants; each priority claim is amended to limit priority to the extent provided under 11 USC §507(a)(4) and the remainder of each claim shall be treated as a non-priority unsecured claim. Counsel for the Debtor represented to the Court the Debtor's position that the Proof of Claim filed by Alex Doaga (Claim #51), should be objected to on the same grounds. Nothing contained herein shall be construed as allowing such claims and all rights to object to such claims are preserved;

NOW, THEREFORE, based upon the Court's consideration of the entire record of this chapter 11 case and the Confirmation Hearing; and upon the arguments of counsel and the evidence adduced at the Confirmation Hearing; and the Court having found and determined that the Disclosure Statement should be approved and the Plan should be confirmed as reflected by the Court's rulings made herein and at the Confirmation Hearing; and after due deliberation and

sufficient cause appearing therefor, the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>.  The Court has jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. § 1334.  Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.  The Debtor is an eligible debtor under section 109 of the Bankruptcy Code.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtor is a plan proponent in accordance with section 1121(a) of the Bankruptcy Code.

C.    <u>Chapter 11 Petition</u>.  On July 31, 2009 (the "<u>Commencement Date</u>"), the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Case</u>").  The Debtor is authorized to continue to operate its business and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed pursuant

5

to section 1104 of the Bankruptcy Code. On August 5, 2009, a statutory committee of unsecured creditors (the "Committee") was appointed pursuant to section 1102 of the Bankruptcy Code. The Committee is the co-proponent of the Joint Plan.

D. Judicial Notice. The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Case.

E. Burden of Proof. The Debtor has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. The Debtor has met such burden.

F. Adequacy of Disclosure Statement. The Disclosure Statement (a) is accurate and contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy law, including the Securities Act of 1933, as amended (the "Securities Act"), (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein and thereby, and (c) is approved in all respects.

G. Voting. As evidenced by the Debtor's Second Amended Ballot Tabulation, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Middle District of Florida (the "Local Rules"), and applicable

6

nonbankruptcy law. At the Confirmation Hearing, Tulip Group Investments, LLC and Green Tulip Enterprises, LLC, amended their secured and unsecured votes and voted for the Joint Plan.

H.     Solicitation.   On August 12, 2009, the Original Plan, the Disclosure Statement, the Ballots, and notice of the Confirmation Hearing were transmitted and served in compliance with the Bankruptcy Rules and the Local Rules.  On September 11, 2009, the Debtor served the Plan Amendment, a new ballot, and a copy of the Scheduling Order.  On September 19, 2009 the Joint Plan and amended ballot were transmitted and served in compliance with the Bankruptcy Rules and the Local Rules. The ballots adequately addressed the particular needs of this Chapter 11 Case and were appropriate for holders of claims in Class 1 (Priority Claims), Classes 2(A) – 2(F) and 2(H) – 2(I) (Secured Claims), Class 3 (General Unsecured Claims), and holders of interests in Class 4 (Equity Security Holders) – the Classes of claims and interests entitled to vote to accept or reject the Plan.  The period during which the Debtor solicited acceptances to the Plan was reasonable in the circumstances of this Chapter 11 Case and enabled holders to make an informed decision to accept or reject the Plan.  The Debtor was not required to solicit votes from Microsoft Capital Corp. (Class 2(G)), as such class is unimpaired under the Plan.  As evidenced by the notice certifications, the transmittal and service of the Original Plan, the Plan Amendment, Joint Plan, the Disclosure Statement, the Ballots, the notice of the Confirmation Hearing, and the Confirmation Hearing (all of the foregoing, the "Solicitation") were timely, adequate, and sufficient under the circumstances.   The Solicitation of votes on the Plan was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the

Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any other applicable rules, laws, and regulations. In connection therewith, the Debtor, the Committee and their affiliates, members, managers, shareholders, partners, employees, attorneys and advisors are entitled to the protection of section 1125(e) of the Bankruptcy Code.

I.      Notice. As is evidenced by the Certificates of Service, the transmittal and service of the Plan, the Disclosure Statement, and the ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

J.      The Sale. As described in the Joint Plan, the Debtor determined to sell its business as a going concern and the Plan provides for a sale of substantially all of its assets (the "Transferred Assets"). The Court scheduled an auction of the Debtor's assets (the "Auction") for September 25, 2009, to be held immediately preceding the Confirmation Hearing. The Scheduling Order provides that the sale of the Transferred Assets shall be contingent upon confirmation of the Plan. At the Auction, the Debtor, in consultation with the committee, selected the Falconhead Offer, and GPS Industries, LLC (the "Purchaser") was the winning bidder with the highest and best offer yielding the most consideration to the estate, in accordance with the bid procedures set forth in the Joint Plan. The Transferred Assets were adequately and appropriately marketed under the

circumstances. Huston and Cornish credit bid the amount of $2,084,945.00 in the auction as authorized by this Court in its order on Emergency Motion of Huston and Cornish to Determine Bid Rights under Debtor's Plan entered September 28, 2009.

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

K.       Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtor and Committee as the proponent, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)       Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). In addition to Administrative Expense Claims and Priority Tax Claims, which need not be classified, Article II of the Plan classifies eleven classes of claims and one class of equity interests. The claims and equity interests placed in each class are substantially similar to other claims and equity interests, as the case may be, in each such class. Valid business, factual, and legal reasons exist for separately classifying the various classes of claims and equity interests created under the Plan and such classes do not unfairly discriminate between holders of claims and equity interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)       Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Section 4.01 of the Plan specifies that Class 2(G) (Microsoft Capital Corp.) is unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Section 4.01 of the Plan designates Class 1 (Priority Claims), Classes 2(A) – 2(F) and 2(H) – 2(I) (Secured Claims), Class 3 (General Unsecured Claims), and Class 4 (Equity Security Holders) as impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)     <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Debtor for each claim in each respective class unless the holder of a particular claim has agreed to a less favorable treatment of such claim, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)     <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan provides adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including the sale of the Transferred Assets to the Purchaser pursuant to that certain Asset Purchase and Sale Agreement, dated as of September 24, 2009, by and among GPSI and the Purchaser (the "<u>Agreement</u>").

(f)     <u>Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>. Section 1123(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Case.

(g)     <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. Section 1123(a)(7) of the Bankruptcy Code is satisfied as the plan appoints a post confirmation Director to wrap up the affairs of the Estate and then dissolve the Debtor .

(h) <u>Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1))</u>. As permitted by section 1123(b)(1) of the Bankruptcy Code, Section 4.01 of the Plan designates (i) Class 1 (Priority Claims), Classes 2(A) – 2(F) and 2(H) – 2(I) (Secured Claims), Class 3 (General Unsecured Claims), and Class 4 (Equity Security Holders) as impaired, and (ii) Class 2(G) (Microsoft Capital Corp.) as unimpaired.

(i) <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>. Section 6.01 of the Plan governs the assumption and rejection of executory contracts and unexpired leases and meets the requirements of section 365(b) of the Bankruptcy Code.

(j) <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>. Each of the provisions of the Plan is appropriate and consistent with the applicable provisions of the Bankruptcy Code.

(k) <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>. Article VI of the Plan provides for the assumption of all executory contracts and unexpired leases that will be assigned to the Purchaser as set forth in the Agreement and the rejection of all other executory contracts and unexpired leases. The Purchaser intends to satisfy the default claims, if any, associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. Accordingly, the Purchaser has agreed to provide prompt cure and adequate assurance of future performance as to all assumed contracts. The record demonstrates that the Purchaser has the ability to do so. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

L.     <u>The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtor has complied with the applicable provisions of the Bankruptcy Code. Specifically:

(a)     The Debtor is an eligible debtor under section 109 of the Bankruptcy Code;

(b)     The Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

(c)     The Debtor and the Committee have complied with the applicable provisions of the Bankruptcy Code, including sections 1122, 1123, 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable nonbankruptcy law, the Scheduling Order, and all other applicable law, in transmitting the Joint Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.

M.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Plan (including the Plan Amendment, the Joint Plan, the Agreement, and all documents necessary to effectuate the Plan) has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. Such good faith is evident from the facts and record of the Chapter 11 Case, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Case. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's estate. The Plan (including the Plan Amendment, Joint Plan and the Agreement, and all documents necessary to effectuate the Plan) was

developed and negotiated in good faith and at arms' length among representatives of the Debtor, the Committee, and the Purchaser.

N. <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtor for services or for costs and expenses of the Debtor's professionals in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

O. <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. Section 1129(a)(5) of the Bankruptcy Code is not applicable to the Chapter 11 Case.

P. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Case.

Q. <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis provided in the Disclosure Statement and the other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an impaired claim either has accepted the Plan or will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

R. <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Class 2(G) is unimpaired and, thus, is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Classes 1, 2(D), 2(E), 2(F), 2(H) and Class

13

3 voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders of the Debtor. Class 2(I) voted to reject the Plan. As found and determined in paragraph AA below, pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that Class 2(I) is impaired and has voted to reject the Plan.

S.    Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)). The treatment of Allowed Administrative Expense Claims pursuant to Section 3.02 of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Section 3.03 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

T.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). Holders of impaired claims in Classes 1, 2(D), 2(E), 2(F), 2(H) and Class 3 voted to accept the Plan, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

U.    Feasibility (11 U.S.C. § 1129(a)(11)). The information in the Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and provides for an orderly liquidation of the Debtor's estate, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

V.    Payment of Fees (11 U.S.C. § 1129(a)(12)). Section 3.03 of the Plan provides that (i) all fees required to be paid pursuant to section 1930(a)(6) of title 28 of the United States Code will accrue and be timely paid until the Chapter 11 Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code, and (ii) any fees

owed to the United States Trustee on or before the Effective Date of the Plan shall be paid on the Effective Date, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

W.    Continuation of Retiree Benefits (11 U.S.C § 1129(a)(13)).    Section 1129(a)(13) of the Bankruptcy Code is not applicable to the Chapter 11 Case.

X.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).    Section 1129(a)(14) of the Bankruptcy Code is not applicable to the Chapter 11 Case.

Y.    Debtor Is Not an Individual (11 U.S.C. § 1129(a)(15)).    Section 1129(a)(15) of the Bankruptcy Code is not applicable to the Chapter 11 Case.

Z.    No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).    The Debtor is a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

AA.    Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)). Class 2(I) voted to reject the Plan.  Classes 2(B) and 2(C) failed to vote. Based upon the evidence proffered, adduced, and presented by the Debtor at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code.  Thus, the Plan may be confirmed notwithstanding the rejection of the Plan by these classes. With respect to section 1129 (b)(2)(B) of the Bankruptcy Code , the Court finds that Class 4 is not  receiving or retaining any property of value and that this section has been satisfied with respect to Class 3.

BB.  <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act and no governmental entity has objected to the confirmation of the Plan on any such grounds.  Therefore, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

CC.  <u>Modifications to the Original Plan</u>.  The modifications to the Original Plan largely pertain to the sale of the Transferred Assets and do not adversely change the treatment of any other claims or equity interests.  Accordingly, pursuant to Bankruptcy Rule 3019(a), these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code), and no further solicitation or voting is required although Debtor did mail to all creditors a new ballot with a copy of the Plan Amendment and an amended ballot with a copy of the Joint Plan.

DD.  <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record of the Chapter 11 Case, the Debtor and the Committee and their respective agents, successors, predecessors, control persons, members, officers, directors, employees and agents and their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons, to the extent applicable, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125

of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the release provisions set forth in Section 11.01 of the Plan.

EE.    Implementation.  All documents necessary to implement the Plan and all other relevant and necessary documents have been developed and negotiated in good faith and at arms' length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

FF.    Releases.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the releases set forth in Section 11.01 of the Plan.  Section 105(a) of the Bankruptcy Code, permits approval of the releases set forth in Section 11.01 of the Plan if, as has been established here based upon the record of the Chapter 11 Case and the evidence presented at the Confirmation Hearing, (i) such provision was integral to the agreement among the various parties in interest and the Purchaser's willingness to purchase the Transferred Assets and essential to the formulation and implementation of the Plan, (ii) confers substantial benefits on the Debtor's estate, and (iii) is supported by special circumstances justifying such unusual relief. Therefore, on the unique facts of this Chapter 11 Case and pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rules 3016(c) and 9019(a), the releases set forth in the Plan and implemented by this Confirmation Order are fair and necessary, equitable, reasonable, and in the best interests of the Debtor, its estate, and parties in interest. *Cf., In re Transit Group, Inc.*, 286 B.R. 811, 817 (Bankr. M.D. Fla. 2002) (citing a multi-factor test applied by several circuit courts, the court held that the release at issue was fair and necessary).  This Court does not believe that the multi-factor

17

test utilized in *Transit* is the sole methodology for analyzing the propriety of approving a third-party release by confirming a plan of reorganization. However, this Court agrees with the common theme of *Transit* and other courts that have approved third-party releases in confirming a plan of reorganization: That the case be unusual and that the releases are fair and necessary. Notwithstanding any other provision in the Plan, and any subsequent amendment or revision thereto, or in this Confirmation Order, confirmation of the Plan shall not release the Officers or Directors of the Debtor from any liability arising from the lawsuit filed by Austin Manufacturing Services, Inc. in the District Court of Travis County, Texas, against Ben Porter, David Chessler, and Scott Bradford, with Cause No. D-1-GN-09-002897.

GG. The record of the Confirmation Hearing and this Chapter 11 Case is sufficient to support the releases provided for in the Plan. Accordingly, based upon the record of the Chapter 11 Case, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the releases set forth in the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the release provisions of the Plan would seriously impair – indeed, frustrate – the Debtor's ability to confirm the Plan, i.e., the Debtor would have no ability to confirm the Plan.

## ORDER

NOW, THEREFORE, IT IS HEREBY **ORDERED, ADJUDGED**, AND **DECREED** THAT:

1.     Findings of Fact and Conclusions of Law.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

2.     Notice of the Confirmation Hearing.  Notice of the Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Scheduling Order, Bankruptcy Code, the Bankruptcy Rules, the Local Rules.

3.     Amendments to Original Plan.  The modifications and amendments to the Original Plan meet the requirements of sections 1127(a) and (c), such modifications do not adversely affect the treatment of the claim of any creditor or equity security holder within the meaning of Bankruptcy Rule 3019(a), and no further solicitation or voting is required.

4.     Solicitation.  The solicitation of votes on the Plan was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

5.     The Disclosure Statement.  The Disclosure Statement (a) contains accurate and adequate information of a kind generally consistent with the disclosure requirements of applicable nonbankruptcy law, including the Securities Act, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section

1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein and thereby, and (c) is approved in all respects.

6.    <u>Confirmation of the Plan</u>.  The Plan and each of its provisions shall be, and hereby are, approved and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

7.    <u>Objections Resolved or Overruled</u>.  Except as provided on the record of the Confirmation Hearing with respect to the objection of Huston and Cornish (the grounds in paragraph 1 therein are preserved and survive confirmation of the Plan), all objections, responses to, and statements and comments, if any, in opposition to, the Plan, other than those adjudicated, withdrawn, waived, or settled prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled in their entirety.

8.    <u>General Authorizations</u>.    No additional action of the respective directors or stockholders of the Debtor shall be required to authorize the Debtor to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted or amended in connection with the implementation of the Plan, including, without limitation, the Agreement.

9.    <u>Binding Effect</u>.  On the date of and following entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtor, all holders of claims and equity interests of the Debtor (irrespective of whether such claims or equity interests are impaired under the Plan or whether the holders of such claims or equity interests have accepted the Plan), any and all non-debtor

parties to executory contracts and unexpired leases with the Debtor, any other party in interest in the Chapter 11 Case, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

10.     <u>Implementation of the Plan</u>.  The Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan.

11.     <u>The Sale</u>.  The sale of the Transferred Assets to the Purchaser is in the best interests of the Debtor, its estate, and all parties in interest. The consideration for the transferred assets is fair and reasonable and the sale to purchaser is approved. The Debtor is hereby authorized to consummate the sale as set forth in the Agreement, execute any documents, and perform any additional action necessary to consummate the sale of the Transferred Assets or as otherwise contemplated by the Agreement.

a)     The sale of the Transferred Assets and the consideration provided by the Purchaser under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

b)     The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code.

c)     Effective as of the Closing (as defined in the Agreement), (i) the sale of the Transferred Assets by the Debtor to the Purchaser shall constitute a legal, valid, and effective transfer of the Transferred Assets notwithstanding any requirement for approval or consent by any person and shall vest the Purchaser with all right, title, and

interest of the Debtor in and to the Transferred Assets, free and clear of all liens, claims, encumbrances, and interests of any kind, provided that the sale of transferred assets shall not affect or modify the rights of licensees under section 365(n); and (ii) the assumption of any Assumed Liabilities (as defined in the Agreement) by the Purchaser constitutes a legal, valid, and effective delegation of any Assumed Liabilities to the Purchaser and divests the Debtor of all liability with respect to any Assumed Liabilities.

d)    Plan Confirmation Does not Affect Certain Litigation: Notwithstanding any other provision contained in this Confirmation Order, the Plan, the Agreement or the Disclosure Statement, nothing contained herein or therein will affect claims or defenses against non-Debtor entities in connection with the following matters to the extent any claims or causes of action continue or arise during the post-sale or post-confirmation period: GPS, Industries, et al v. ProLink Solutions, LLC, et al (Civil Action No. 08-cv-4028, United States District Court For the Northern District of Illinois); and ProLink Solutions, LLC, et al v. GPS Industries, et al (Civil Action No. 07-02128-PHX-JWS United States District Court for the District of Arizona) (collectively the "ProLink Litigations"). For the avoidance of any doubt, nothing contained in this Confirmation Order, the Plan, the Agreement or the Disclosure Statement will have any effect on any post-sale or post-confirmation claims, counterclaims, setoffs, defenses, or other rights or remedies of all plaintiffs and defendants and their successor-In-interests in the ProLink Litigations, including, without limitation, the Purchaser and ProLink Systems, Inc. ("ProLink Systems"). All such post-sale or post-confirmation claims, counterclaims, setoffs, defenses, or other rights or remedies survive confirmation of the Plan. Additionally, no release shall affect the pre- or post-petition liability of any named non-

22

Debtor defendants in the Prolink Litigations. However, no pre-petition or administrative claims in any way related to the ProLink Litigations described above, or assumed executory contracts, shall be asserted against the Debtor or the Estate. Upon closing of the sale, all claims of any kind asserted or unasserted by ProLink Systems against the Debtor or the Estate or which may be asserted against the Debtor or the Estate by ProLink Systems, including but not limited to those asserted directly or indirectly through or on account of any claim or right of ProLink Solutions, LLC or ProLink Holdings, LLC shall be automatically deemed waived and released.

(e)     Treatment of Certain Types of Claims: Except as provided herein, notwithstanding any other provision contained in this Confirmation Order, the Plan, the Agreement, or the Disclosure Statement, nothing contained herein or therein will affect any post-sale or post-confirmation claims, counterclaims, defenses, setoffs, or other rights or remedies belonging to ProLink Systems (whether as successor-in-interest or otherwise) against any non-debtor entities, including, without limitation the Purchaser. Such post-sale or post-confirmation claims, counterclaims, defenses, setoffs, or other rights or remedies will attach to the assets being purchased by the Purchaser. For the avoidance of doubt, any post–sale or post-confirmation claims belonging to ProLink Systems will be assertable against the Purchaser or other successor-in-interest of the Debtor, but not against the Debtor or the Estate.

(f)     The provisions of this Order authorizing the sale of the Transferred Assets free and clear of liens, claims, encumbrances, and interests and the Excluded Liabilities (as defined in the Agreement), shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements,

assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.

(g)     All persons or entities who are presently, or on the Closing Date (as defined in the Agreement) may be, in possession of some or all of the Transferred Assets are hereby directed to surrender possession of said Transferred Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

(h)     On or before the Closing Date, the Debtor's creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any liens, claims, encumbrances, and interests of any kind against the Transferred Assets, whether recorded or otherwise.  If any person or entity that has filed financing statements or other documents or agreements evidencing any liens, claims, encumbrances, and interests in or against the Transferred Assets shall not have delivered to the Debtor prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such liens, claims, encumbrances, and interests that the person or entity has with respect to the Transferred Assets, the Debtor is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Transferred Assets prior to the Closing, and the Purchaser is authorized to file such documents after Closing.

(i)     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Transferred Assets, and all such licenses, permits, registrations, and governmental

authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.

(j)     All of the Debtor's interests in the Transferred Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser.   Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Transferred Assets acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Transferred Assets to the Purchaser.

(k)     The Purchaser is not a "successor" to the Debtor or its estate by reason of any theory of law or equity, and, except as expressly provided in the Agreement, the Purchaser is not assuming, nor shall it or any affiliate of the Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtor or its estate in any way whatsoever relating to or arising from the Debtor's ownership or use of the Transferred Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtor or its operations or the Transferred Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, including any claims based on successor or transferee liability, against the Purchaser or any affiliate of the Purchaser.   Except to the extent the Purchaser assumes the Assumed Liabilities pursuant to the Agreement, or as otherwise

25

set forth herein, neither the purchase of the Transferred Assets by the Purchaser or its affiliates, nor the fact that the Purchaser or its affiliates are using any of the Transferred Assets previously operated by the Debtor, will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to the Debtor's businesses within the meaning of (i) any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations) or (ii) any litigation.

(l)     Except to the extent expressly included in the Assumed Liabilities, or as otherwise set forth herein, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtor, the Committee, all debt security holders, equity security holders, the Debtor's employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding liens, claims, encumbrances, and interests of any kind or nature whatsoever against, in or with respect to any of the Debtor or the Transferred Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Transferred Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Transferred Assets to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such liens, claims, encumbrances, and interests, whether by payment, setoff, or otherwise, directly or indirectly, against the Purchaser or any affiliates, successors or assigns thereof and each of their respective current and former members, managers, officers, directors, managed

26

funds, investment advisors, attorneys, employees, partners, affiliates, financial advisors and representatives (each of the foregoing in its individual capacity), or the Transferred Assets; provided however, that the rights of a licensee under §365(n) shall not be affected or modified by the sale.

(m) This Confirmation Order is predicated on the Falconhead Purchaser closing the sale. If the closing does not occur, all of the parties' rights, previously asserted, whether ruled upon or otherwise, on all issues, including, without limitation, in connection with the Sale, the Joint Plan, and Confirmation, are preserved for all purposes.

(n) The waiver of the claims against the Debtor's estate by ProLink Systems, Inc., as represented in open court, is conditioned on the Purchaser closing the sale. It is the intent of the parties that the Purchaser close the sale within fifteen (15) days after confirmation of the Plan. If the sale is not closed on or before fifteen (15) days after confirmation or a reasonable time thereafter, nothing prejudices ProLink Systems' rights to raise this issue with the Bankruptcy Court.

12. <u>Treatment of Claims and Equity Interests in Impaired Classes</u>.  All claims in Classes 1, 2, and 3 shall be treated in accordance with section 4.01 of the Plan.

(a) Each holder of an allowed Class 1 Priority Claim will be paid in full, in cash, on the later of 30 days after the effective date and 10 business days after the entry of a final non-appealable order allowing the claim if a timely objection thereto is filed.

(b) The holder of an allowed claim in Class 2(A) shall receive the following treatment: The secured portion of this claim shall be paid pursuant to the terms

of its agreements with the Debtor from the collateral that secures it. Any unsecured portion of this claim shall be treated as a Class 3 Claim. Any residual rights to the collateral, after the secured claim has been paid shall be transferred to the Purchaser.

 (c) Each claim in Classes 2(B), (C), (D), and (F) shall be treated as an allowed unsecured claim and their security interests are hereby avoided and preserved for the benefit of the Estate.

 (d) The holders of allowed claims in Classes 2(E) and 2(H) shall receive the following treatment: Subject to the Court's determination concerning the effect of the credit bid by the holder of the Class 2(I) claim, the Auction of the Assets shall establish the extent to which these claims are secured, and to that extent the claims shall be paid in full, without interest, from July 31, 2009, subject to the 51/49% split provisions provided in the Joint Plan, any unsecured portion of this claim shall be treated as an allowed Class 3 claim.

 (e) The claim in Class 2(G) shall be paid by the Purchaser according to contract terms and the holder's lien rights and shall not be modified by the plan.

 (f) Regarding Class 2(I), the amount of $2,084,945.15 shall be escrowed from the sale of the assets of the estate pending determination by the Court as to whether cause exists under section 363(k) to modify or limit the holders' right to credit bid under section 363(k) and whether section 363(k) applies to the sale under the Plan. The escrowed amount amount shall be distributed upon further order of the Court. Any unsecured portion of this claim shall be treated as a Class 3 claim.

(g)  In accordance with section 4.01(b), the allowed amount of Class 3 claims shall be paid, pro rata, from the proceeds of the sale of the Transferred Assets and from any net proceeds from any litigation brought by the estate (after fees and costs).

(h)  On the Effective Date, all equity interests in Class 4 have and shall be deemed to have no value.

13.  <u>Dissolution</u>. Larry Hyman, or a suitable replacement if he is unable or unwilling to serve in this capacity, shall be employed by the Debtor to wind down the Debtor, prosecute the claims retained by the Debtor, to object to claims, and to make distributions under the Plan. Once Mr. Hyman has concluded his obligations and the proceeds have been distributed, the Debtor shall be dissolved pursuant to Florida law. The Compensation of Mr. Hyman and any professionals retained by him shall be subject to court approval. Mr. Hyman shall be deemed a fiduciary for Class 3 creditors. Mr. Hyman shall make distributions to Class 3 claimants as soon as practicable and make sufficient reserves for disputed claims until such disputed claims are allowed or disallowed.  However, the initial distribution to Class 3 Claimants shall not occur until at least 30 days after the expiration of the deadline for filing proofs of claim based upon rejection of executory contracts.  Furthermore, Mr. Hyman shall place in a separate account the sum of $400,000 for payment to unsecured creditors which sum shall not be subject to administrative claims, such that the Class 3 Claimants shall receive no less than $400,000 in the aggregate.

14.  <u>Existing Securities and Agreements Cancelled</u>.  Except (i) for purposes of evidencing a right to distributions under the Plan, (ii) with respect to executory contracts or unexpired leases that have been assumed by the Debtor and assigned to the Purchaser,

29

or (iii) as otherwise provided under the Plan, on the Effective Date, all the agreements and other documents evidencing the claims or rights of any holder of a claim against the Debtor, including all lending and security agreements and encumbrances evidencing such claims, shall be cancelled.

15. <u>Compromise of Controversies</u>. In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all claims and controversies resolved under the Plan, and the entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019, subject to the provisions of the Plan.

16. <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>. Pursuant to sections 365(b) and 1123(b) of the Bankruptcy Code, the assumption under to the Plan of certain executory contracts and unexpired leases as set forth in the Agreement (the "<u>Purchased Contracts</u>") is hereby approved as of the Effective Date. The rejection of all other executory contracts and unexpired leases is hereby approved as of the Effective Date. All objections to such assumption or rejection are overruled.

17. <u>Assignment of Executory Contracts or Unexpired Leases.</u> On the Effective Date, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, the Debtor may transfer and assign, free and clear of all liens, claims, encumbrances, and interests, any of its executory contracts or unexpired leases that have not been rejected to the Purchaser or its affiliates without any further act, authority, or notice.

(a) Any executory contract or unexpired lease transferred and assigned to the Purchaser shall remain in full force and effect for the benefit of the transferee or

assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in sections 365(b)(2), (e), and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. Any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment constitutes an unenforceable anti-assignment provision and is void and of no force or effect. The stay under Bankruptcy Rule 6006(d) is hereby waived, and the terms and conditions of this Confirmation Order shall be immediately effective and enforceable upon its entry.

(b) Each non-debtor party to a Purchased Contract is forever barred, estopped, and permanently enjoined from (i) asserting against the Debtor or the Purchaser, or their successors or assigns, or their respective property, any default arising prior to, or existing as of, the Commencement Date, or, against the Purchaser, any counterclaim, defense, or setoff, or other claim asserted or assertable against the Debtor, and (ii) imposing or charging against the Debtor, the Purchaser, or any of their affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtor's assumption and assignment to the Purchaser of the Purchased Contracts.

(c) The failure of the Debtor or the Purchaser to enforce at any time one or more terms or conditions of any Purchased Contract shall not constitute a waiver

31

of such terms or conditions, or of the Debtor's and the Purchaser's rights to enforce every term and condition of the Purchased Contracts.

(d)    Upon the assumption by the Debtor and the assignment to the Purchaser of any Purchased Contract and the payment of the applicable cure amount in full, all defaults under such Purchased Contract shall be deemed to have been cured, and any counterparty to such Purchased Contract shall be prohibited from exercising any rights or remedies against any Debtor or non-debtor party to such Purchased Contract based on an asserted default that occurred on, prior to, or as a result of, the Closing, including the type of default specified in section 365(b)(1)(A) of the Bankruptcy Code.

(e)    The assignment of each of the Purchased Contracts to the Purchaser is made in good faith under sections 363(b) and 363(m) of the Bankruptcy Code.

(f)    Treatment of Certain Executory Contracts: Except as provided in Section 11(d) of this Confirmation Order, no provision contained in this Confirmation Order, the Plan, the Agreement, or the Disclosure Statement, will affect any claims or other rights or remedies belonging to the parties under that certain Consent to Assignment of Licenses Agreement ("License Assignment Agreement") executed by the Debtor and David L. Chessler in favor of LV Administrative Services, as agent for Laurus Master Fund (In Liquidation) and its affiliates.  The Debtor and the Purchaser consent to the terms of the License Assignment Agreement. To the extent the Purchaser directs the Debtor to reject any of the licenses referenced in the License Assignment Agreement, the Debtor and such Purchaser agree that ProLink Systems' rights under Bankruptcy Code Section 365(n) are preserved.   To the extent the Purchaser directs the

Debtor to reject any licenses to Huston, Cornish, Optimal I.P. Holdings, LP or any of their affiliates, the Debtor and Purchaser agree that such licensees' rights under §365(n) are preserved.

18.     Releases.  Except as otherwise provided in this Confirmation Order, as of the Effective Date, the Officers and Directors of the Debtor, the Secured Creditors, the DIP Lender, Green Tulip Enterprises, Ltd., the Committee, and the Purchaser and its officers, directors, employees, agents, members, managers, and affiliates are released from any and all claims that may arise caused by the filing of the petition for relief, from the negotiation of the Plan, as amended in open court, the sale of the Transferred Assets, and the confirmation of the Plan; provided, however, nothing contained in the Plan or herein shall act as a release concerning any Retained Claims or any obligations under the Plan or the Agreement; and provided further, nothing contained in the Plan or herein shall act as a release of any claim for fraud, criminal activity, breach of contract, or actions based upon any guaranty.  The release provisions contained in Section 11.10 of the Plan shall be and hereby are effective and binding on all persons and entities.

19.     Interference with Implementation.   Upon the entry of the Confirmation Order, all holders of claims and equity interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, including the sale of the Transferred Assets to the Purchaser.

20.     Payment of Statutory Fees.  All fees required to be paid by section 1930 of title 28 of the United States Code shall accrue and be timely paid until the Chapter 11 Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.  Any

fees owed to the United States Trustee on or before the Effective Date shall be paid on the Effective Date.

21.   <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>.   Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor pursuant to the Plan and this Confirmation Order, including, without limitation, the sale of the Transferred Assets to the Purchaser, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

22.   <u>Retention of Jurisdiction</u>.   Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, pursuant to Section 8.02 of the Plan and sections 105 and 1142 of the Bankruptcy Code, until the Chapter 11 Case has been fully and finally dismissed, this Court shall retain the fullest and most extensive jurisdiction over the Chapter 11 Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

23.   <u>Exemption from Certain Taxes</u>.   Pursuant to section 1146(c) of the Bankruptcy Code, the making or delivery of any deed or other instrument of transfer

34

under, in furtherance of, or in connection with, the Plan will not be subject to any stamp

tax, recording tax, personal property transfer tax, real estate transfer tax, sales or use tax,

or other similar tax.

24.     Modifications.  The Plan may be amended, modified, or supplemented by

the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as

otherwise permitted by law without additional disclosure pursuant to section 1125 of the

Bankruptcy Code.

25.     Governing Law.  Unless a rule of law or procedure is supplied by federal

law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of

Florida shall govern the Plan and any agreements, documents, and instruments executed

in connection with the Plan, except as otherwise provided in the Plan and the Agreement.

26.     Applicable Nonbankruptcy Law.  Pursuant to section 1123(a) and 1142(a)

of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and related

documents or any amendments or modifications thereto shall apply and be enforceable

notwithstanding any otherwise applicable nonbankruptcy law.

27.     Documents and Instruments.  Each federal, state, commonwealth, local,

foreign, or other governmental agency is hereby authorized to accept any and all

documents and instruments necessary or appropriate to effectuate, implement or

consummate the transactions contemplated by the Plan and this Confirmation Order.

28.     Governmental Approvals Not Required.  This Confirmation Order shall

constitute all approvals and consents required, if any, by the laws, rules, or regulations of

any state or other governmental authority with respect to the implementation or

consummation of the Plan and Disclosure Statement, any documents, instruments, or

agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement, provided, however, that this Confirmation Order does not supplant the exclusive jurisdiction of any state or government authority to issue its own approvals with respect to the subject of this paragraph.

29.     Notice of Confirmation Order and Occurrence of Effective Date.    In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtor shall serve notice of the entry of this Confirmation Order to all parties who hold a claim or equity interest in these cases, including the United States Trustee.    Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order and the occurrence of the Effective Date.    In addition, the Bankruptcy Noticing Center shall serve a copy of this Confirmation Order on parties listed on the Court's mailing matrix for this chapter 11 case.

30.     Substantial Consummation.    On the Effective Date and closing of the sale of the transferred assets to the purchaser, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code and the Committee shall be deemed discharged of its duties.

31.     Waiver of Stay.    The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)), whether for ten (10) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

32.     <u>Inconsistency</u>.     To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

33.     <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

34.     <u>Payment of fees and costs of professionals of DIP Lender</u>.  The fees and costs of the DIP Lender's professionals including but not limited to those of  Horwood Marcus & Berk Chartered, and David R. Softness, P.A. pursuant to the final DIP Order are otherwise limited to $68,000 ("DIP Fees").

Dated: October 2, 2009

_____
CATHERINE PEEK McEWEN
UNITED STATES BANKRUPTCY JUDGE